W. Willard WIRTZ, Secretary of Labor, U. S. Dept. of Labor

v.

**LOCAL 174, AMERICAN FED. OF MUSICIANS.**

Civ. A. No. 16384.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 21, 1967.

Findings of Fact and Conclusions
of Law Aug. 18, 1967.

Louis C. LaCour, U. S. Atty., John W. Douglas, Asst. Atty. Gen., Harland F. Leathers, Atty. Department of Justice, and Nathan Rachel, Office of Solicitor, U. S. Department of Labor, Dallas, Tex., for plaintiff.

Thomas J. Meunier, Dodd, Hirsch, Barker & Meunier, New Orleans, La., for defendant.

## REASONS FOR JUDGMENT

MITCHELL, District Judge.

The plaintiff, Secretary of Labor, brought suit herein alleging that the defendant, Local 174, American Federation of Musicians, had violated various provisions of the Labor Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401 et seq.). It specifically alleged that the defendant imposed unreasonable qualifications on the eligibility of members in good standing to be candidates for and hold office. This was based upon the protest of a member of the union who had aspired to be a candidate for the office of Vice President. It additionally alleged misconduct in the actual conduct of the election based upon the union's failure to preserve for one year the ballots and other records pertaining to the election and upon the union's permitting absentee ballots to be cast and counted under procedures which did not protect their secrecy. The defendant filed a motion to dismiss or for summary judgment insofar as the latter two counts are concerned. This motion was predicated upon the rationale that a suit

under the Act may only encompass issues which have been validly protested by a member of the union. In other words, it is defendant's position that before a member may, under the Act, file a complaint with the Secretary of Labor he must first exhaust his remedies within the union by complaining of the conduct in question to the union. In the instant case, the complainant filed a protest with the union concerning his ineligibility for the office of Vice President but failed to file a protest concerning the actual conduct of the election.

It is the Secretary's position that the qualifications for union office were such an integral part of the election that a complaint against the reasonableness of such qualifications would include the actual conduct of the entire election.

■ The law is well settled that before the Secretary of Labor may institute an action under the Act, the member must first exhaust his internal remedies. See: Wirtz v. Local Unions 9, 9-A and 9-B, Int. U. of Op. Eng., 366 F.2d 911 (CA 10–1966), Wirtz v. Local Union No. 406, 406-A, 406-B and 406-C, 254 F. Supp. 962 (E.D.La.-1966), Wirtz v. Local Union No. 125 International Hod Carriers, Etc., 231 F.Supp. 590 (N.D.Ohio-1964).

In Wirtz v. Local Unions No. 406, 406-A, 406-B and 406-C, supra, the court, although noting that the defendant had imposed unreasonable qualifications on its members for candidacy, stated that it was compelled to deny the Secretary's request to set aside the election for the reason that one of the indispensable prerequisites to such relief, exhaustion of available internal remedies, had not been complied with as required by the Act.

Further, as noted in Wirtz v. Local Unions No. 9, 9-A and 9-B, Int. U. of Op. Eng., supra, the act itself clearly indicates a limitation of the part of the Secretary and the court to consider only matters in which a member has exhausted his internal remedies.

■ We do not agree with the Secretary that exhaustion of the member's right of protest within the union concerning the qualification for candidacy for office operates to bring the conduct of the election under scrutiny of the Secretary and within the jurisdiction of this court.

Therefore, as the union member has failed to exhaust his internal remedies concerning the actual conduct of the election, the Secretary is precluded now from litigating these counts in the complaint and the sole remaining issue before the court is the reasonableness of the qualifications for eligibility to office of union members.

Judgment will be rendered in accordance with this opinion.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action was instituted by the Secretary of Labor under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 481 et seq.), hereinafter referred to as the Act, to set aside the election of officers by the defendant Local 174, American Federation of Musicians, held on September 22, 1965. The complaint filed by the Secretary alleged various violations of the Act but the only violation now before this court is the one alleging that the defendant imposed an unreasonable qualification for eligibility to be a candidate for and to hold office (29 U.S.C. § 481 (e)).

Article VIII, Sec. 3, of the defendant's by-laws provides that:

"No member shall be nominated for the office of President or Vice-President who has not served in some elective capacity for a period of not less than one (1) year during the immediately past five (5) years of his then current membership."

The defendant union has a total of nineteen elective officers elected for a two year term. Elections are held annually with approximately one-half of the officers being elected each year. At the time of the protested election, the defendant union had a total of 839 members in good standing, twenty-seven of whom

were qualified for the office of President or Vice-President. However, all members in good standing were eligible to run for the other seventeen elective offices.

In opposition to the plaintiff's claim of unreasonableness the defendant union stressed the need for experienced and capable persons to hold the jobs of president and vice-president due to the protracted negotiations which are held annually with various groups such as the symphony, the opera and the summer pops.

■ It is the finding of this court that the requirement of prior office holding during the immediately past five years for the office of president and vice-president is not an unreasonable qualification and is therefore not in violation of Section 401(e) of the Act (29 U.S.C. § 481(e)). Although it is true that only twenty-seven of the union members are eligible to hold the offices of president and vice-president under this provision of the by-laws, all members in good standing are eligible to run for the seventeen other elective offices. The charts filed herein by plaintiff, demonstrating the lack of such a requirement of prior office holding in the by-laws of various unions, although relevant, do not establish, per se, the unreasonableness of such requirements.

It is apparent that in the case of a union the size of Local 174, American Federation of Musicians, possessing a gross annual income of approximately $70,000 and representing a varied cross section of local musicians, the offices of president and vice-president must be held by persons both experienced and responsible if the union is to possess the qualities of stability and continuity upon which its existence may depend.

■ To the president is entrusted the responsibility of negotiating contracts vital to the livelihood of the union members. If it is the union's conviction that this task should only be entrusted to those members who, by virtue of their prior office holding, have demonstrated the qualities of leadership and competence that these jobs require, it is not for this court to tamper with these internal union decisions. This is particularly true in view of the fact that a resolution to repeal this section of the by-laws was decisively defeated by the members of the defendant union.

As noted in Wirtz v. Hotel Monteland Club Employees Union, Local 6 No. 513, 381 F.2d 500, decided July 28, 1967 by the United States Court of Appeals for the Second Circuit

"In deciding the issue of reasonableness we must keep in mind the fact that the Act did not purport to take away from labor unions the governance of their own internal affairs and hand that governance over either to the courts or to the Secretary of Labor. The Act strictly limits official interference in the internal affairs of unions. See, Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); Gurton v. Arons, 339 F.2d 371 (2d Cir. 1964). The Act prescribes only certain basic minima and leaves the area not covered by these minimum prescriptions to the decisions of the unions themselves.

" 'Congress intentionally created a narrow remedy under Title IV of the LMRDA so that interference with union elections and management would be kept at a minimum' (citing authority)."

The above quoted case also notes that the legislative policy of leaving to the unions the maximum degree of self government is emphasized at many points in the legislative history of the Act.

■ We therefore hold that the minimum basic principles of union democracy do not require that every union entrust the administration of its affairs to untrained and inexperienced rank and file members, and that the union's own rules as to eligibility must prevail when such rules are not patently unreasonable.

The plaintiff has failed to carry the burden of proof to establish unreasonableness on the part of the defendant union in its qualifications for office holding. Let judgment be entered accordingly.